**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

**FILED**
May 3, 2023
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| NEWCRESTIMAGE HOLDINGS, LLC, § <br> SUPREME BRIGHT AMARILLO II, LLC, § <br> and NEWCRESTIMAGE § <br> CONSTRUCTION, LLC, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> § <br> THE TRAVELERS LLOYDS § <br> INSURANCE COMPANY, § <br> § <br> *Defendant*. § | CASE NO. 2:23-cv-00039-Z-BR <br><br> **JURY DEMANDED** |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs NewcrestImage Holdings, LLC, Supreme Bright Amarillo II, LLC and NewcrestImage Construction, LLC (collectively "NewcrestImage") hereby file this First Amended Complaint against Defendant The Travelers Lloyds Insurance Company ("Travelers") and would respectfully show the Court as follows:

**I.   INTRODUCTION**

1. This is an insurance coverage dispute involving Travelers' wrongful refusal to pay for property damage and business income loss sustained by Plaintiffs at a 226-room hotel in Amarillo, Texas following Winter Storm Uri in February 2021.

**II.   PARTIES**

2. Plaintiff NewcrestImage Holdings, LLC is a Texas limited liability company with its principal place of business in Grapevine, Texas. The ultimate members of NewcrestImage Holdings, LLC are residents of Texas.

3. Plaintiff Supreme Bright Amarillo II, LLC ("Supreme Bright") is a Texas limited liability company with its principal place of business in Grapevine, Texas. The ultimate members of Supreme Bright Amarillo II, LLC are residents of Texas and Colorado.

4. Plaintiff NewcrestImage Construction, LLC ("NewcrestImage Construction") is a Texas limited liability company with its principal place of business in Grapevine, Texas. The ultimate members of NewcrestImage Construction, LLC are residents of Texas.

5. Defendant Travelers has represented that it is an unincorporated association of twelve underwriters domiciled in Connecticut. Travelers has appeared in this action.

### III.   JURISDICTION & VENUE

6. The foregoing allegations are incorporated herein by reference.

7. This Court has jurisdiction over this case under 28 U.S.C. § 1332(a) because (1) no Plaintiff is incorporated in the same state as Defendant; (2) no Plaintiff has its principal place of business in the same state as Defendant; and (3) the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (2) because (1) Travelers is resident and subject to personal jurisdiction in this district; and (2) a substantial part of the events or omissions giving rise to the claims asserted herein took place within this district.

### IV.   TRAVELERS' POLICY INSURES PROPERTY DAMAGE AND BUSINESS INCOME LOSS AT THE HOTEL IN AMARILLO

**A.   The Policy**

9. The foregoing allegations are incorporated herein by reference.

10. Travelers issued Commercial Property Insurance Policy No. KTK-CMB-8P29056-2-20 (the "Policy") to NewcrestImage Holdings, LLC for the period from March 28, 2020 through March 28, 2021.

11. The Policy includes as additional insureds both Supreme Bright and NewcrestImage Construction, and its schedule of insured premises includes The Embassy Suites – Amarillo Downtown, located at 550 South Buchanan St., Amarillo, Texas 79101 (the "Hotel").

12. The Policy includes, among other things, coverage both for property damage and business interruption.

13. The Policy's "Property Coverage" form promises that Travelers will "pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss."

14. Relative to this coverage, the Policy includes a Boiler and Machinery Endorsement, which extends the "Covered Causes of Loss" to include an "Accident" to a "Covered Object."

15. For purposes of this coverage, an "Accident" includes "(1) [f]ailure of pressure or vacuum equipment; (2) [m]echanical failure, including rupture or bursting caused by centrifugal force; or (3) [e]lectrical failure, including arcing; that causes physical damage to a Covered Object and necessitates its repair or replacement."

16. According to the Policy's terms, "[i]f an initial Accident causes other Accidents, all will be considered one Accident.  All Accidents that manifest themselves at the same time and are the direct result of the same cause will also be considered one Accident, regardless of the number of locations involved."

17. A "Covered Object" includes, without limitation, (1) "[e]quipment designed and built to operate under internal pressure or vacuum other than weight of contents"; and (2) "[e]lectrical or mechanical equipment that is used in the generation, transmission or utilization of energy."  Such equipment must be "[a]t or within 1,000 feet of the Insured's premises," "[o]wned or leased by the Insured or operated under the Insured's control;" and "[n]ot otherwise excluded."

18. The Policy does not include any exclusion or other limitation on coverage purporting to deny coverage for damage caused by freezing temperatures or other extreme weather events.

19. In short, without excluding damage caused by extreme weather, the Policy's relevant Boiler and Machinery coverage insures physical loss or damage to certain mechanical equipment, which uses energy, when that equipment suffers a mechanical or electrical failure.

20. The Policy's "Business Income" form promises that Travelers will pay for the actual loss of Business Income sustained by the Insured due to the necessary "suspension" of the Insured's operations during the "period of restoration"; provided that, the "suspension" must be caused by direct physical loss or damage to property at the Insured's premises.

21. For purposes of this coverage, the Policy defines Business Income as the sum of (1) net income (net profit or loss before income taxes) that would have been earned or incurred by the Insured; and (2) continuing normal operating expenses incurred by the Insured.

22. A "suspension" of operations means, in relevant part, the partial or complete cessation of the Insured's business operations. And the "period of restoration" is defined, in relevant part, as the period of time that (1) begins with the date and time of direct physical loss or damage to property at the Insured's premises caused by or resulting from a Covered Cause of Loss; and (2) ends when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

23. In summary, the Policy's business income coverage insures both the loss of profits and expenditure of continued operating expenses that results when the Insured's operations are interrupted, in whole or in part, because of direct physical loss or damage to property at the Insured's premises, during period of time needed to reasonably repair such loss or damage.

### B. The Hotel

24. The foregoing allegations are incorporated herein by reference.

25. At all relevant times, including the period from February 2021 through January 2022, Supreme Bright was the owner of the Hotel.

26. The Hotel is a 226-room property located in the heart of downtown Amarillo, across the street from the Amarillo Civic Center. Built by Plaintiffs in 2017, the facility features an indoor pool, gym, on-site restaurant and conference space.

27. Heating and cooling for the Hotel are provided by a variable refrigerant flow (VRF) system, as opposed to a traditional HVAC system.

28. In general, a traditional HVAC system will heat or cool air using refrigerant at one centralized location and circulate the conditioned air through ducts to different parts of a building.

29. In contrast, a VRF system circulates refrigerant from a centralized unit to multiple sub-units in different locations within a single building, where the air is heated or cooled independently.

30. In a hotel with dozens of guestrooms and common areas, a VRF system provides flexibility and efficiencies not available from a traditional HVAC system.

31. The Hotel's VRF system consists of twenty-four (24) roof-top units, with 1-2 condensers in each unit, to service the Hotel's 226-guest rooms and common areas.

32. Between its installation in 2017 and January 2021, the Hotel's VRF system experienced only minor maintenance issues typical of ordinary wear and tear.

### V. WINTER STORM URI CAUSED MECHANICAL & ELECTRICAL FAILURE OF THE HOTEL'S VRF SYSTEM

33. The foregoing allegations are incorporated herein by reference.

34.     Between February 13 and 17, 2021, Winter Storm Uri struck the Texas panhandle, including Amarillo.  The once-in-a-generation storm brought more than 12 inches of snow and temperatures as low as -11 degrees Fahrenheit to Amarillo.

35.     The extreme weather conditions placed an extraordinary burden on the Hotel's VRF system during the week of February 14, 2021.  To combat the freezing temperatures outside, the system operated at excess capacity for days, and still the temperatures inside the Hotel fell below freezing.

36.     Two interior pipes burst in different locations on February 15 and February 17. Guests in still-occupied areas of the Hotel complained of cold temperatures even while the VRF sub-units were operating at maximum capacity.

37.     After Winter Storm Uri subsided and temperatures returned to normal, guest complaints regarding the Hotel's heating and air-conditioning continued, and Supreme Bright was forced to take dozens of untenantable rooms out-of-service.

38.     On behalf of Supreme Bright, NewcrestImage consulted with numerous vendors, including the VRF system's original designer, manufacturer and installer, to restore the VRF system to full operation.  The work performed by these parties, including NewcrestImage Construction, showed that the VRF system sustained a mechanical and electrical failure as a result of the excess demand and extreme operating conditions brought on by Winter Storm Uri.

39.     Within the 24 roof-top units that control the flow of refrigerant to the sub-units servicing guest rooms and common areas, Plaintiffs found, among other things, failed, inoperable fan motors, compressors and burned out circuit boards.  The mechanical and electrical failure of these (and related components) caused physical damage to VRF units and sub-units at the Hotel.

40. Ultimately, Supreme Bright incurred significant expense, in excess of $2 million, to make repairs to the damaged and inoperable VRF system at the Hotel. On behalf of Supreme Bright, NewcrestImage Construction has devoted substantial resources, including staff hours and other expenses, to administer the repairs to the Hotel's VRF system.

41. Given limitations on the availability of the parts and qualified contractors needed to service the Hotel's VRF system, these repairs reasonably progressed between March 2021 and the fall of 2022.

42. As a direct result of the loss and damage to the VRF system, Supreme Bright has been required to take dozens of rooms out-of-service, both to avoid subjecting guests to rooms with non-functioning air-conditioning sub-units and to accommodate the extensive repairs that have taken place since February 2021.

43. Plaintiffs have also suffered substantial loss of revenue and incurred significant continued operating expenses between February 2021 and the fall of 2022, during which time repairs have been ongoing to the Hotel's VRF system.

## VI. TRAVELERS WRONGFULLY REFUSED COVERAGE FOR PLAINTIFFS' PROPERTY DAMAGE & BUSINESS INCOME CLAIM RELATING TO THE VRF SYSTEM

44. The foregoing allegations are incorporated herein by reference.

45. Plaintiffs submitted a claim under the Policy for loss and damage to the Hotel's VRF system, as well as the accompanying business income loss (the "Claim").

46. Travelers initially responded to the Claim in July 2021 with correspondence stating that Travelers "has been unable to determine whether a portion of Newcrest's claim is covered under their policy based on the information available to us at this time." Believing that the Hotel was subject to an interruption of electrical power during Winter Storm Uri and citing the Policy's Utility Services exclusion, Travelers requested documentation of power fluctuations or failures

within 30 days before or after February 15, 2021. Travelers' July 2021 correspondence does not mention the Policy's Boiler & Machinery Endorsement.

47. Plaintiffs subsequently provided Travelers with documentation from the Hotel's electrical utility provider, Xcel Energy, confirming that there was no outage or disturbance on February 13, or February 15, 2021. Travelers also confirmed directly with Xcel Energy that there was no record of any electrical outage or disturbance during the second week of February 2021.

48. On May 3, 2022, Travelers issued another letter relating to the Claim. This correspondence also purports to express uncertainty regarding the cause of the damages to the VRF units at the Hotel and requests that the insured submit to an examination under oath by Travelers' outside counsel. The purported source of the confusion lay in reports of a power interruption and surge at the Hotel during the week of February 14, 2021, in contrast to the information obtained from Xcel Energy denying any electrical outage or disturbance at the Hotel during this period.

49. Despite the alleged uncertainty and purported necessity to conduct an examination under oath, Travelers also (1) rejected Plaintiffs' proof of loss on the alleged basis that the cause of loss indicated—freeze—is not addressed under the Policy's Boiler & Machinery Endorsement; and (2) represented that while "[t]he claim was originally submitted to our property department for consideration as a freeze event," "it was later determined that the roof mounted condenser units were not damaged from the freeze." Travelers' May 2022 correspondence also asserted that, based on a review of invoices, the repairs conducted on the VRF system involved installation errors and maintenance issues.

50. After substantial delays by Travelers' outside counsel, the corporate Director of Engineering for NewcrestImage Construction, Mr. James Maguire, submitted to an examination under oath on August 5, 2022. During the examination, Mr. Maguire refuted Travelers' assertions

that the repairs addressed installation or maintenance issues. Mr. Maguire also confirmed that the stress and overwork occasioned by the extreme weather conditions during Winter Storm Uri were the likely cause of the mechanical and electrical failure that damaged the VRF system.

51. In spite of and contrary to the testimony provided by Mr. Maguire, and after additional unnecessary delays, Travelers finally issued its coverage position for this Claim on November 28, 2022. In denying coverage for the Claim, Travelers inappropriately attempted to avoid coverage for the damage caused by Winter Storm Uri by misrepresenting the facts and the Policy's terms. Travelers misrepresented the facts by purporting to distinguish between damage caused by "freeze" and damage resulting from overwork during the freeze. Specifically, Travelers mischaracterized Mr. Maguire's testimony as stating that "the damages to the HVAC system were not due to the freeze event but were due to the HVAC system overworking after the freeze event in an attempt to maintain temperature control at the premises."

52. Unable to cite to any exclusion for "freeze" or "overworking after the freeze event," Travelers then inappropriately attempted to distinguish between covered damage resulting from a "freeze" and the Policy's coverage for an "Accident" to a "Covered Object" in the Boiler and Machinery Endorsement. Travelers also misrepresented the Policy's terms in asserting that "the Boiler and Machinery Endorsement does not cover freeze." Nothing in the Policy's terms avoids coverage for an "Accident," *i.e.*, a mechanical or electrical failure, to a "Covered Object" that resulted from freezing temperatures or the extreme weather conditions during Winter Storm Uri.

53. Contrary to and in spite of Mr. Maguire's testimony, Travelers' November 28, 2022 correspondence further asserts that the repairs performed on behalf of Supreme Bright either (1) addressed pre-loss or maintenance issues; or (2) involved "service visits and troubleshooting, which we have not been able to attribute to any defined Accident to Covered Object."

54. Finally, in spite of (1) Travelers inconsistent position asserting that "Newcrest has not established covered Accidents to Covered Object triggering coverage under the policy"; and (2) the Policy's terms whereby "[a]ll Accidents that manifest themselves at the same time and are the direct result of the same cause will also be considered one Accident," Travelers' November 28, 2022 correspondence also falsely represents that "the claim involves multiple Accidents with no common cause, subject to multiple deductibles." Elsewhere, without any attempt at explanation or reconciliation with the other inconsistent statements in the letter, Travelers purports to equate individual condensers with separate "Accidents" in order to avoid any payment under the Policy whatsoever.

55. In short, unable to substantiate a denial of coverage based on any interruption in utility service, Travelers inconsistently manufactured facts and distorted policy terms in order to reject Plaintiffs' Claim.

### VII. CAUSES OF ACTION

#### A. Breach of Contract

56. The foregoing allegations are incorporated herein by reference.

57. The Policy is an enforceable contract.

58. NewcrestImage Holdings, LLC is insured under the Policy.

59. Supreme Bright is insured under the Policy.

60. NewcrestImage Construction is insured under the Policy.

61. All conditions precedent to coverage under the Policy have been performed or waived.

62. The actual facts and the terms of the Policy unambiguously require Travelers to provide coverage to Plaintiffs for the Claim, including the cost of repairing the damaged VRF system and the accompanying business income loss.

63. Alternatively, the terms of the Policy are ambiguous and must be construed, together with the actual facts, in favor of coverage for Plaintiffs' Claim under the Policy.

64. Travelers has materially breached its contract with Plaintiffs by refusing and rejecting Plaintiffs' Claim under the Policy.

65. Travelers' breach of the Policy has caused Plaintiffs' substantial damages.

**B.  Breach of the Duty of Good Faith and Fair Dealing**

65. The foregoing allegations are incorporated herein by reference.

66. Travelers owes Plaintiffs a duty of good faith and fair dealing in connection with the handling of Plaintiffs' Claim under the Policy.

67. Travelers has violated its duty of good faith and fair dealing by refusing coverage for Plaintiffs' Claim without a reasonable basis. Travelers' liability for Plaintiffs' Claim is reasonably clear. In spite of this reasonably clear liability, Travelers has (1) misrepresented material facts relating to the cause of the damage to the Hotel's VRF system; (2) misrepresented the Policy's coverage for damage caused by freeze; (3) failed to provide a prompt or reasonable explanation of the basis of its denial of the Claim; and (4) failed to conduct a reasonable investigation of the cause and nature of the mechanical and electrical failures that damaged the Hotel's VRF system.

68. Plaintiffs have suffered, and will continue to suffer, actual damages as a result of Travelers' breach of its duty of good faith and fair dealing.

69. Travelers' acts and omissions in this regard, whether committed directly or through the conduct of its agents and representatives, were malicious, fraudulent and/or grossly negligent, justifying the imposition of punitive and exemplary damages.

**C.  Violation of Chapter 541 of the Texas Insurance Code**

65. The foregoing allegations are incorporated herein by reference.

66. Pursuant to § 541.154 of the Texas Insurance Code, Plaintiffs provided notice of their intent to pursue a claim against Travelers under § 541.151 of the Texas Insurance Code on February 7, 2023, in Plaintiffs' Original Petition.

67. Travelers has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

68. Travelers has violated Section 541.060(a)(1) of the Texas Insurance Code by misrepresenting material facts relating to the cause of the damage to the Hotel's VRF system.

69. Travelers has violated Section 541.060(a)(1) of the Texas Insurance Code by misrepresenting the Policy's terms relating to coverage for damage caused by freezing temperatures and extreme weather events, like Winter Storm Uri.

70. Travelers has violated Section 541.060(a)(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, with respect to which Travelers' liability is reasonably clear.

71. Travelers has violated Section 541.060(a)(3) of the Texas Insurance Code by failing to promptly provide Plaintiffs a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for Travelers' denial of the Claim.

72. Travelers has violated Section 541.060(a)(4) of the Texas Insurance Code by failing within a reasonable time to affirm or deny coverage for the Claim.

73. Travelers has violated Section 541.060(a)(7) of the Texas Insurance Code by refusing coverage for the Claim without conducting a reasonable investigation.

74. As a result of Travelers' conduct, Plaintiffs have suffered damages in an amount not less than $2 million as well as attorney's fees in an amount not less than $50,000.

75. Travelers knowingly committed one or more of the violations referenced above, and therefore, Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

D. **Violation of Chapter 542A of the Texas Insurance Code**

65. The foregoing allegations are incorporated herein by reference.

66. Pursuant to § 542A.003 of the Texas Insurance Code, Plaintiffs provided notice of their intent to pursue a claim against Travelers under Sections 542.060, 542.061 of the Texas Insurance Code on February 7, 2023, in Plaintiffs' Original Petition.

67. Travelers has engaged in conduct that constitutes violations of Chapter 542 of the Texas Insurance Code, including, without limitation, by delaying and/or failing to timely pay Plaintiffs' Claim.

68. Consequently, Plaintiffs are entitled to the damages set forth in Section 542.060(c) of the Texas Insurance Code, including, in addition to the amount of Plaintiffs' loss, interest at the rate of five percent per annum added to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees.

E. **Attorneys' Fees**

69. The foregoing paragraphs are incorporated herein by reference.

70. Due to the actions of Travelers, Plaintiffs have been required to retain the services of the law firm of Haynes and Boone, L.L.P. of Dallas, Texas. Plaintiffs have agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to § 38.001 of the Texas Civil Practices & Remedies Code, as well as Chapters 541 and 542A of the Texas Insurance Code, Plaintiffs are entitled to an award of reasonable attorneys' fees against Travelers in an amount to be established at trial.

## V.   JURY DEMAND

71.    Plaintiffs hereby request a trial by jury.

## VI.   PRAYER

WHEREFORE, Plaintiffs NewcrestImage Holdings, LLC, Supreme Bright Amarillo II, LLC and NewcrestImage Construction, LLC respectfully request that this Court grant Plaintiffs the following relief:

(1)   Judgment awarding Plaintiffs all damages caused by Defendant's breach of contract;

(2)   Judgment awarding Plaintiffs all damages caused by Defendant's bad faith;

(3)   Judgment awarding Plaintiffs all damages sustained as a result of Defendant's violations of Chapter 541 of the Texas Insurance Code;

(4)   Judgment awarding Plaintiffs all damages sustained as a result of Defendant's violations of Chapter 542A of the Texas Insurance Code;

(5)   Judgment awarding Plaintiffs all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code and Chapters 541 and 542A of the Texas Insurance Code;

(6)   Judgment awarding Plaintiffs pre-judgment and post-judgment interest in the amount allowed by law;

(7)   Judgment awarding Plaintiffs all costs of court; and

(8)   Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

*/s/ Micah Skidmore*
Micah E. Skidmore
State Bar No. 24046856
Storm Lineberger
State Bar No. 24122681

HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Micah.Skidmore@haynesboone.com
Storm.Lineberger@haynesboone.com

**ATTORNEYS FOR PLAINTIFFS NEWCRESTIMAGE HOLDINGS, LLC, SUPREME BRIGHT AMARILLO II, LLC AND NEWCRESTIMAGE CONSTRUCTION, LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 2nd day of May 2023, a copy of the foregoing instrument was electronically filed and served on all counsel of record pursuant to the Federal Rules of Civil Procedure:

                                            */s/ Micah Skidmore*
                                            Micah Skidmore